UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| TOLLIVER RAY ASLINGER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | 3:10-CV-476 |
| ) | (VARLAN/GUYTON) |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 72(b) of the Federal Rules of Civil Procedure, and the Rules of this Court for a report and recommendation regarding disposition by the District Court of Plaintiff's Motion for Summary Judgment [Doc. 16] and Defendant's Motion for Summary Judgment [Doc. 19]. Plaintiff Tolliver Ray Aslinger ("Plaintiff") seeks judicial review of the decision by Administrative Law Judge ("ALJ") Douglas J. Kile to deny him benefits, which was the final decision of Defendant Michael J. Astrue, Commissioner of Social Security ("the Commissioner").

On July 14, 2006,[1] Plaintiff filed an application for supplemental security income ("SSI"). [Tr. 9]. In the application, Plaintiff alleged a period of disability beginning on July 1, 2006. [Tr. 9]. After his application was denied initially and also denied upon reconsideration,

---
[1]The Court notes that while the ALJ's decision indicated that the SSI application date was July 7, 2006, the SSI application [Tr. 91] in the record shows that the Plaintiff actually applied on July 14, 2006.

1

Plaintiff requested a hearing. On November 4, 2008, a hearing was held before the ALJ to review the determination of Plaintiff's claim. [Tr. 17-39]. On March 19, 2009, the ALJ found that Plaintiff was not under a disability from July 7, 2006, through the date of the decision. [Tr. 16]. On September 22, 2010, the Appeals Council denied Plaintiff's request for review; thus, the decision of the ALJ became the final decision of the Commissioner. [Tr. 1-5]. Plaintiff now seeks judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g).

## I. ALJ FINDINGS

The ALJ made the following findings:

1. The claimant has not engaged in substantial gainful activity since July 7, 2006, the application date (20 C.F.R. 416.971 *et seq.*).

2. The claimant has the following severe impairments: tendonitis of the left knee, obesity, borderline intellectual functioning and a reading disorder (20 C.F.R. 416.921 *et seq.*).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 416.925 and 416.926).

4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform simple, unskilled jobs that do not require the ability to read at the light level of exertion with no frequent squatting and no frequent contact with the general public.

5. The claimant is unable to perform any past relevant work because he has no post [sic] relevant work experience other than a few short lived odd jobs (20 C.F.R. 416.965).

6. The claimant was born on July 15, 1984 and was 21 years old, which is defined as a younger individual age 18-49, on the date the application was filed (20 C.F.R. 416.963).

7. The claimant has at least a high school education and is able to communicate in English (20 C.F.R. 416.964).

8. Transferability of job skills is not an issue in this case because the claimant has no past relevant work (20 C.F.R. 416.968).

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 C.F.R. 416.969 and 416.969a).

10. The claimant has not been under a disability, as defined in the Social Security Act, since July 7, 2006, the date the application was filed (20 C.F.R. 416.920(g)).

[Tr. 11, 12, 15, 16].

## II. DISABILITY ELIGIBILITY

To qualify for SSI benefits, a plaintiff must file an application and be an "eligible individual" as defined in the Act. 42 U.S.C. § 1382(a); 20 C.F.R. § 416.202. An individual is eligible for SSI if he has financial need and he is aged, blind, or under a disability. See 42 U.S.C. § 1382(a). "Disability" is the inability "[t]o engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A). An individual shall be determined to be under a disability only if his physical and/or mental impairments are of such severity that he is not only unable to do his previous work, but also cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. 42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B).

3

Disability is evaluated pursuant to a five-step analysis summarized as follows:

1. If claimant is doing substantial gainful activity, he is not disabled.

2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity and vocational factors (age, education, skills, etc.), he is not disabled.

Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520).

A claimant bears the burden of proof at the first four steps. Id. The burden of proof shifts to the Commissioner at step five. Id. At step five, the Commissioner must prove that there is work available in the national economy that the claimant could perform. Her v. Comm'r of Soc. Sec., 203 F.3d 388, 391 (6th Cir. 1999) (citing Bowen v. Yuckert, 482 U.S. 137, 146 (1987)).

### III. STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial

4

evidence." Blakley v. Comm'r of Soc. Sec., 581 F.3d 399, 405 (6th Cir. 2009) (citing Key v. Callahan, 109 F.3d 270, 273 (6th Cir. 1997)). If the ALJ applied the correct legal standards and his findings are supported by substantial evidence in the record, his decision is conclusive and must be affirmed. Warner v. Comm'r of Soc. Sec., 375 F.3d 387, 390 (6th Cir. 2004); 42 U.S.C. § 405(g). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 241 (6th Cir. 2007) (quotation omitted); see also Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison v. NLRB, 305 U.S. 197, 229 (1938)).

It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. Crisp v. Sec'y of Health & Human Servs., 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." Buxton v. Halter, 246 F.3d 762, 773 (6th Cir. 2001) (quoting Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986)). Therefore, the Court will not "try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." Walters, 127 F.3d at 528.

In addition to reviewing the ALJ's findings to determine whether they were supported by substantial evidence, the Court also reviews the ALJ's decision to determine whether it was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner. See Wilson v. Comm'r of Soc. Sec., 378 F.3d 541, 544 (6th Cir. 2004). The Court may, however, decline to

5

reverse and remand the Commissioner's determination if it finds that the ALJ's procedural errors were harmless.

An ALJ's violation of the Social Security Administration's procedural rules is harmless and will not result in reversible error "absent a showing that the claimant has been prejudiced on the merits or deprived of substantial rights because of the [ALJ]'s procedural lapses." Wilson, 378 F.3d at 546-47. Thus, an ALJ's procedural error is harmless if his ultimate decision was supported by substantial evidence *and* the error did not deprive the claimant of an important benefit or safeguard. See id. at 547.

On review, Plaintiff bears the burden of proving his entitlement to benefits. Boyes v. Sec'y of Health & Human Servs., 46 F.3d 510, 512 (6th Cir. 1994) (citing Halsey v. Richardson, 441 F.2d 1230 (6th Cir. 1971)).

## IV. ANALYSIS

As an initial matter, the Court notes that, as the Commissioner points out, the Plaintiff's arguments on appeal only relate to his alleged mental deficiencies, rather than the physical limitations, which he also initially alleged, some of which the ALJ found to be valid. [See Doc. 17; Doc. 20 at n. 2]. Accordingly, the Court will not address any of the physical limitations alleged by the Plaintiff in this Report and Recommendation and will instead focus on the specific arguments raised by the Plaintiff.

In his motion for summary judgment, the Plaintiff argues that the decision of the ALJ contains errors of law and that substantial evidence does not support the ALJ's disability determination. [Doc. 17 at 5]. Specifically, the Plaintiff argues that the ALJ committed

6

reversible error when he failed to properly evaluate the Plaintiff's educational records as required by 40 C.F.R. § 416.913(d) and that the ALJ committed plain error in determining that the Plaintiff possesses a high school education. [Doc. 17 at 8-10]. Next, the Plaintiff contends that the ALJ improperly gave "decisive weight" to the opinion of Alice Garland, M.S., when the contents of her report, prepared at the request of DDS, did not support her findings. [Doc. 17 at 10-15].

The Commissioner responds that the ALJ's disability determination was supported by substantial evidence. The Commissioner maintains that (1) the ALJ properly reviewed the evidence when he determined that the Plaintiff did not meet or equal Listing 12.05C because Plaintiff's school records were from years well before the alleged onset date of his disability; and (2) the ALJ properly considered the opinion of Alice Garland, M.S. [Doc. 20 at 3-9].

In this case, the Defendant's application for SSI was based on him meeting the requirements Listing 12.05C. Listing 12.05C provides, in relevant part:

> 12.05 Mental retardation: Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>
> . . . .
>
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function.

20 C.F.R. 404, Subpart P, App'x 1, Part A, Listing 12.05C.

Normally, a claimant can establish disability by demonstrating all of the medical findings listed for an impairment. 20 C.F.R. § 404.1525(c)(3). "If a claimant does not have one of the findings, however, [he or] she can present evidence of some medical equivalent to that finding." Bailey v. Comm'r Soc. Sec., No. 09-6389 (6th Cir. Mar. 11, 2011) (citing §§ 404.1525 & 404.1526). To demonstrate such a medical equivalent, the claimant must present "medical findings equal in severity to *all* the criteria for the one most similar listed impairment." Sullivan v. Zebley, 493 U.S. 521, 531 (1990) (emphasis in original).

Thus, to be disabled under Listing 12.05C, the Plaintiff must establish that: (1) his valid verbal, performance, or full scale IQ score was between 60 and 70; (2) he had significantly subaverage general intellectual functioning with deficits in adaptive functioning, which manifested prior to age 22; and (3) he has a mental or physical impairment imposing an additional and significant work-related limitation.

The Court will address each of the Plaintiff's arguments in turn.

### A. The ALJ's Consideration of Alice Garland's Opinion

The Plaintiff argues that "[t]he opinion of the medical source relied upon by the ALJ to discredit the Plaintiff was not supported by relevant evidence." [Doc. 17 at 10]. The Plaintiff claims that the ALJ gave the report made by clinical psychologist Alice Garland, M.S., on August 28, 2006, "decisive weight," despite the fact that her "medical opinion was not supported by the contents of the report." [Doc. 17 at 10]. The Plaintiff contends that the ALJ relied solely on the statements in the report of Ms. Garland, that she believed that the Plaintiff did not put forth full effort during testing, when the ALJ determined that the Plaintiff did not have the

8

sufficient IQ to satisfy the requirements of Listing 12.05C. [Doc. 17 at 10-11]. The Plaintiff argues that this reliance was in error because Ms. Garland's report never "provides an explicit example of the Plaintiff's actions which lead her to believe the Plaintiff did not put forth full effort." [Doc. 17 at 11]. The Plaintiff contends that Ms. Garland's opinion that the Plaintiff may have been giving less than a full effort is further undermined by the Plaintiff's score of 9 on the REY 15 Item Test for malingerers, because scores of less than 9 are thought to indicate malingering. [Doc. 17 at 11-15].

The Commissioner responds that the ALJ in this case properly considered Ms. Garland's opinion in determining the Plaintiff's residual functional capacity ("RFC") and that substantial evidence supports his consideration of Ms. Garland's opinion. [Doc. 20 at 3-4]. Pointing out that the ALJ found no evidence in the record of mental health treatment of the Plaintiff or functional limitations imposed by any of the Plaintiff's doctors during the relevant time period, the Commissioner further contends that Ms. Garland's overall opinion is consistent with the evidence in the record as a whole. [Doc. 20 at 5]. Additionally, the Commissioner argues that Ms. Garland's opinion is consistent with the daily activities reported by the Plaintiff, undermining the Plaintiff's claim of a mental impairment. [Doc. 5-6]. Lastly, the Commissioner asserts that the assessments produced by state agency psychological consultants George T. Davis, Ph.D., and William M. Ragan, M.D., present in the record [Tr. 368-85, 403-20], are likewise consistent with Ms. Garland's finding that the Plaintiff had borderline intellectual functioning and only moderate limitations. [Doc. 20 at 6].

In situations under the Social Security Act where an opinion does not garner controlling weight, such as opinions of non-treating physicians, the appropriate weight to be given to an

9

opinion will be determined based upon the following factors: length of treatment, frequency of examination, nature and extent of the treatment relationship, amount of relevant evidence that supports the opinion, the opinion's consistency with the record as a whole, the specialization of the source, and other factors which tend to support or contradict the opinion. 20 C.F.R. §§ 404.1527(d)(2); 416.927(d)(2).

The opinion of a source who has examined the claimant will generally be given more weight than the opinion of a source who has not examined the claimant. 20 C.F.R. § 416.927(d)(1). Moreover, "[t]he better explanation a source provides for an opinion," and the more relevant evidence a source gives to support the opinion, "particularly medical signs and laboratory findings," the more weight the opinion will be given. 20 C.F.R. § 416.927(d)(3). An opinion that is consistent with the record as a whole will be given more weight than an opinion that contradicts the record. 20 C.F.R. § 416.927(d)(4).

Alice Garland, M.S., is the only source who examined the Plaintiff with regard to his IQ and his alleged qualification under Listing 12.05C during the relevant time period, and she had seen him on one occasion previous to her 2006 examination. [Tr. 11-16, 38, 362-67]. It appears undisputed that Ms. Garland examined the Plaintiff but did not have an ongoing treatment relationship with him. In August 2006, Ms. Garland conducted an interview with the Plaintiff, gave him a mental status exam, and gave the Plaintiff the WAIS-III, WRAT-3, and the REY 15 Item Test. [Tr. 362]. In Ms. Garland's general observations, she noted that the Plaintiff's grooming and hygiene were adequate and that "[h]e was superficially cooperative but, at times, the examiner thought he might not have been putting forth a consistently good effort in testing, and as a result, test results are thought to be a low estimation of his ability." [Tr. 362]. Ms.

Garland noted that the Plaintiff was taking no medication at the time [Tr. 362], indicating that he was not undergoing treatment for mental illness. Ms. Garland noted that the Plaintiff said that he was "not depressed just nervous." [Tr. 363]. The Plaintiff graduated from high school in special education and was married at the time of the clinical interview, with one child. [Tr. 363].

On the WAIS-III, the Plaintiff received a Verbal IQ of 70, a Performance IQ of 64, and a Full Scale IQ of 67. [Tr. 365]. In explaining that the scores put the Plaintiff in the mildly mentally retarded range, Ms. Garland noted that the scores may be low and that he "may not have put forth a consistently good effort in testing." [Tr. 365-66]. Ms. Garland further observed that although the Plaintiff scored in the first grade reading level, he also skipped some easier words to say the word "split." [Tr. 366]. Ms. Garland opined that the Plaintiff's true functioning is in the borderline range. [Tr. 366]. Although the Plaintiff indicated to Ms. Garland that he was nervous around strangers, she observed that he was "pleasant" to her and that he "did not appear anxious although the examiner was a stranger." [Tr. 364-65].

In his discussion of Listing 12.05C in this case, the ALJ stated the following:

> In terms of the requirements in paragraph C, they are not met because the claimant does not have a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function. As discussed later in this decision the claimant's true level of intellectual ability is judged to be in the borderline range.

[Tr. 11-12]. Discussing the consultative psychological evaluation conducted by Ms. Garland later in the decision, the ALJ wrote that she "questioned the claimant's effort and stated that she thought it to be a low estimate of his ability." [Tr. 13]. Elaborating further on Ms. Garland's report, the ALJ wrote:

11

> The claimant reported that he was reapplying for disability because he could not read or write, cannot stand being around strangers, and due to problems with his legs. The claimant was neat and well groomed. He made poor eye contact. He was fully oriented and thought processes were organized but slightly concrete. His affect and mood were congruent and appropriate. He did not appear anxious. He gave a history of alcohol and marijuana but not for several years. In terms of daily activities, he stated that he played with his son, cooked and shopped occasionally, did his own laundry and was fixing up his mobile home. He stated that he had no friends. Intelligence testing was performed in which the claimant scored in the mild range of mental retardation with a Full Scale IQ of 67. However, due to questionable effort the examiner felt that his true level of intellectual ability was in the borderline range. It was also noted that "although he said that he was anxious around people, he was in a public place today and did not appear to be excessively anxious. . ." The diagnoses were rule out social phobia, rule out reading disorder and borderline intellectual functioning.

[Tr. 13]. Ms. Garland's evaluation is the only report related to the Plaintiff's alleged mental deficiencies discussed in the ALJ's opinion. [See Tr. 9-16].

The Plaintiff's argument against the weight given by the ALJ to Ms. Garland's report is primarily based on a perceived lack of explanation for why she believed that the Plaintiff had a higher intellectual ability than his IQ scores indicated. However, the Court finds that Ms. Garland pointed out several inconsistencies in her report. Ms. Garland's notation that the Plaintiff complained of having anxiety around strangers and in public places, while appearing perfectly at ease during the evaluation, indicates that he may not have been entirely honest in his description of his possible mental problems. Furthermore, Ms. Garland's observation that the Plaintiff skipped easy words in the reading test although able to read the more difficult words provides an example as to why she believed that he may not have been giving forth a full effort during testing. These observations, when taken together with Ms. Garland's belief that the Plaintiff was "superficially cooperative" and the fact that the Plaintiff's daily activities were

inconsistent with the low scores he achieved, sufficiently explain Ms. Garland's opinion that the Plaintiff has borderline intellect and gave less than a full effort. See 20 C.F.R. § 416.927(d)(3).

Additionally, as the Commissioner argues, the assessments of state agency psychological consultants George T. Davis, Ph.D., and William M. Ragan, M.D., coupled with the daily activities reported by the Plaintiff, are consistent with Ms. Garland's findings. [Doc. 20 at 5-7, Tr. 368-85, 403-20]. In finding that the Plaintiff did not meet the requirements for the mental retardation Listing 12.05, Dr. Davis found that the Plaintiff had borderline intellectual functioning with a reading disorder, mild restrictions in activities of daily living, moderate difficulties in maintaining social functions and maintaining concentration, persistence, or pace, and no episodes of decompensation. [Tr. 372-80]. As noted by the ALJ, the Plaintiff expressed that he played with his son, did his own laundry, occasionally cooked and shopped, and was fixing up his mobile home during the relevant time period. [Tr. 13, 364]. Despite the Plaintiff's argument that the ALJ improperly found that he had "a high school education," the Plaintiff did successfully complete high school and obtain a diploma of special education in 2003. [Tr. 203]. Ms. Garland's findings were thus entitled to more weight because of their consistency with the record as a whole. See 20 C.F.R. § 416.927(d)(4).

Moreover, the Plaintiff must meet all requirements under Listing 12.05C to be found disabled under that listing. As to the requirement that the Plaintiff have significantly subaverage general intellectual functioning with deficits in adaptive functioning, Listing 12.05 does not define "adaptive functioning." However, Listing 12.00 provides an overview of how adaptive skills and abilities should be evaluated. It explains, "[a]ctivities of daily living include adaptive activities such as cleaning, shopping, cooking, taking public transportation, paying bills,

13

maintaining a residence, caring appropriately for your grooming and hygiene, using telephones and directories, and using a post office." 20 C.F.R. 404, Subpart P, App'x 1, Listing 12.00(C). Further, the claimant's activities will be evaluated for "their independence, appropriateness, effectiveness, and sustainability," to determine whether the claimant is "capable of initiating and participating in activities independent of supervision or direction." Id.

In this case, the Plaintiff makes no argument relating to the ALJ's findings as to this requirement. However, the Court finds that the Plaintiff's daily activities of doing his own laundry, occasionally shopping and cooking, fixing up his mobile home, that he graduated from high school, albeit in special education, and his good grooming and hygiene, all indicate that the Plaintiff does not have significantly subaverage general functioning with deficits in adaptive functioning and thus does not meet this requirement of Listing 12.05C.[2]

Due to the fact that the ALJ gave appropriate weight to Ms. Garland's opinion, as indicated by its consistency with the record as a whole in this case, the Court finds that the ALJ's finding that the Plaintiff's scores on IQ tests administered by Ms. Garland and included in her report likely underestimated the Plaintiff's actual level of intellectual functioning is supported by substantial evidence. Moreover, given the Court's finding that the Plaintiff failed to meet the second requirement of Listing 12.05C, any error in the weight given to Ms. Garland's opinion would be harmless in this case as the ALJ's finding that the Plaintiff did not meet Listing 12.05C is supported by substantial evidence.

---

[2] The Court notes that the ALJ found that the Plaintiff had the severe impairments of tendonitis in his left knee, obesity, borderline intellectual functioning, and a reading disorder. However, the Court need not make a finding as to whether the Plaintiff meets the third requirement of Listing 12.05C at this time. Given the requirement that a claimant meet all criteria of a listing to qualify under it, this finding is irrelevant to the outcome of this case.

14

### B. The ALJ's Consideration of the Plaintiff's Educational Records

Next, the Plaintiff argues that in making his disability determination, the ALJ erred by not considering the educational records and psychological assessments produced during the Plaintiff's elementary and high school years and provided to the ALJ. [Doc. 17 at 12]. The Plaintiff argues that, "[p]ursuant to 20 C.F.R. § 416.913(d), the ALJ is required to evaluate evidence from educational personnel," and that the ALJ in not addressing the educational records the Plaintiff provided to the Office of Disability Adjudication and Review ("ODAR"), failed to do so in this case. [Doc. 17 at 8-9]. The Commissioner responds that this argument is without merit because the school records referenced were prepared between six and nine years before the onset date of disability alleged by the Plaintiff. [Doc. 20 at 8]. Moreover, the Commissioner contends that the Plaintiff's IQ scores reported in his scholastic records are irrelevant to a determination of disability at this time because the results were not sufficiently current in accordance with 20 C.F.R. 404, Subpart P, App'x 1, Part A, Listing 12.05C.

In listing what "other sources," in addition to treating physicians and medical opinions, may be used to show the severity of a claimant's impairment, 20 C.F.R. § 416.913(d)(1) includes, "[e]ducational personnel (for example, school teachers, counselors, early intervention team members, developmental center workers, and daycare workers)." The Plaintiff argues that this provision required that the ALJ consider the test results and classifications of him (i.e. "learning disabled") from his elementary and high school years in making his determination as to whether the Plaintiff had the IQ score necessary to meet Listing 12.05. [Doc. 17 at 8-9].

In a Social Security ruling entitled "Considering Opinions and Other Evidence from Sources Who Are Not 'Accepted Medical Sources' in Disability Claims," the Social Security Administration ("SSA") clarified that an adjudicator must "consider all *relevant* evidence in an

15

individual's case record," including opinions from "other sources," which fall under 20 C.F.R. § 416.913(d), and include school counselors, teachers, and social workers. SSR 06-03P, 2006 WL 2329939, at *6 (August 9, 2006) (emphasis added). In discussing whether an adjudicator's decision must discuss the consideration given to these "other sources," the SSA provided:

> Although there is a distinction between what an adjudicator must consider and what the adjudicator must explain in the disability determination or decision, the adjudicator generally should explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, *when such opinions may have an effect on the outcome of the case*.

Id. (emphasis added).

In the instant case, the Plaintiff claims that the evidence the ALJ erred in not considering his scholastic record in determining that he did not meet the IQ requirement of Listing 12.05C. [Doc. 17 at 8]. Specifically, the Plaintiff points to the full scale IQ score of 67 which he received on the WISC-III in the third grade,[3] the full scale IQ of 79, which he received in the fifth and was affirmed in the eighth grade, the fact that he was "certified as learning disabled" in reading and writing, and statements written by his examiners. [Doc. 17 at 2-3, 8-10].

As the Commissioner points out [Doc. 20 at 8], in discussing proof of mental retardation listings in children under age eighteen under 112.05, the SSA prescribes that "IQ results must be sufficiently current for accurate assessment under 112.05." 20 C.F.R. 404, Subpart P, App'x. 1, Part A, Listing 112.00D(10). Further, the SSA writes that "[g]enerally, the results of IQ tests tend to stabilize by the age of 16." Id. Accordingly, "IQ test results obtained at age 16 or older should be viewed as a valid indication of the child's current status[,]" and "IQ test results

---

[3] In his brief, the Plaintiff misstates the grades during which his IQ evaluations took place. The Plaintiff's brief indicates that the full scale IQ score of 67 was obtained in fifth grade [Doc. 17 at 2], while the record shows that the score came from a third grade test and was mentioned for background purposes in a fifth grade report [Tr. 193].

16

obtained between ages 7 and 16 should be considered current . . . for 2 years when the IQ is 40 or above." Id. Meeting the criteria of Listing 12.05C requires a "valid" IQ score, and the Commissioner argues that scores obtained prior to age sixteen would not be valid in this instance and cannot be utilized to meet the 12.05C requirements for an adult. [See Doc. 20 at 8]. The Commissioner further argues that the school records in question do not relate to the relevant time period since they were produced more than six years prior to the onset date alleged by the Plaintiff. [Doc. 20 at 8].

As stated above, the ALJ was required to consider all relevant information in the Plaintiff's record, including information provided by "other sources," like the school records here. As the Commissioner argues, the Plaintiff's IQ test results from the third, fifth, and eighth grades are arguably irrelevant to a determination of the Plaintiff's current IQ for the purposes of Listing 12.05C, due to the fact that those tests were given prior to the Plaintiff reaching the age of sixteen and are more than two years old at this point. While the Court finds that those results may be relevant to the requirement under Listing 12.05C that he has deficits in adaptive functioning, which manifested prior to age 22, as the results were from tests given to the Plaintiff well before he reached age 22, the Plaintiff raises no issue on appeal related to that specific requirement of 12.05C.

Even analyzing the issue as if the dated school records were relevant to the ALJ's disability determination in this case, in reviewing the eighth grade psychological evaluation referenced by the Plaintiff, the Court finds that the evaluation was given three months short of the Plaintiff's sixteenth birthday, on April 19, 2000, and the report states that his "Full Scale IQ score of 79 is judged to be a more accurate measure of his intellectual potential." [Tr. 176-77]. Therefore, even if the ALJ was required to consider the Plaintiff's school test results, he was not

17

required to discuss these "other sources" in his decision on disability in this case because the adjudicator should "generally" do so "when such opinions may have an effect on the outcome of the case." See SSR 06-03P at *6. The full scale IQ of 79 discussed in the report from the Plaintiff's eighth grade year is actually from a test given to the Plaintiff in the fifth grade in 1997. The report additionally showed a Verbal Scale IQ score of 74 and a Performance Scale IQ of 89. [Tr. 176, 193]. Considering the score of 79 and the psychologist's evaluation that the score was "judged to remain valid," and "place[d] him in the upper reaches of the borderline range of intellectual functioning," [Tr. 178], the results in the report would not have affected the outcome of the case. If anything, it appears that the ALJ considering the 2000 report, which is the most recent of the school reports, would have further supported the finding that the Plaintiff is not mentally retarded under Listing 12.05C.

Because as explained above, the Court finds that the Plaintiff did not meet the second requirement under Listing 12.05C and that the ALJ's finding that the Plaintiff's true intellectual functioning is likely in the borderline range is supported by substantial evidence, the Court finds that any possible error in not discussing the Plaintiff's scholastic records is harmless. This finding is particularly underscored by the IQ score of 79 in the 1997 and 2000 scholastic reports discussed by the Plaintiff. The IQ score of 79 was judged to be a true estimate of the Plaintiff's intellect by his evaluators in 2000, when the Plaintiff was nearly sixteen years old, when the IQ is thought to stabilize. [Tr. 176-77]; See 20 C.F.R. 404, Subpart P, App'x 1, Part A, Listing 112.00D(10).

Accordingly, the Court finds that the ALJ's finding that the Plaintiff did not meet the IQ requirement of Listing 12.05C is supported by substantial evidence because the overall record in this case supports that determination.

18

## V. CONCLUSION

For the reasons provided herein, it is hereby **RECOMMENDED**[3] that the Plaintiff's Motion for Summary Judgment **[Doc. 16]** be **DENIED**, and that the Commissioner's Motion For Summary Judgment **[Doc. 19]** be **GRANTED**.

                                                  Respectfully submitted,

                                                  s/ H. Bruce Guyton
                                                United States Magistrate Judge

---

[3] Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b), Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466 (1985). The district court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive, or general. Mira v. Marshall, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. Smith v. Detroit Fed'n of Teachers, 829 F.2d 1370 (6th Cir. 1987).